UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE: )<br>AIR CRASH NEAR KIRKSVILLE, MO )<br>ON OCTOBER 19, 2004 )<br>)<br>) | Case No. 4:05MD1702 JCH<br>THIS DOCUMENT RELATES TO:<br>*Diffenderfer*, Case No. 4:05CV191 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant American Airlines, Inc.'s Motion to Strike Diffenderfer Plaintiffs' Rebuttal Expert Witness Erik Rigler ("Rigler"), filed June 19, 2007. (Doc. No. 125-1). The matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs brought the instant action on January 31, 2005. The Amended Case Management Order required Plaintiffs to disclose all primary expert witnesses, and to provide reports for those witnesses, no later than January 15, 2007. (Doc. No. 102). Plaintiffs were to make those expert witnesses available for deposition no later than March 1, 2007. (Id.). Defendant's disclosures then were due on April 1, 2007, with depositions to be completed by April 27, 2007. (Id.). Both parties' deadline for the disclosure of experts designated as rebuttal witnesses was May 14, 2007, with depositions to be completed by May 30, 2007. (Id.). All discovery in this case was to be completed by May 30, 2007. (Id.).

On May 14, 2007, Plaintiffs disclosed Rigler, the expert witness whose testimony is at issue here, as a rebuttal witness. (See Disclosure of Rebuttal Expert Testimony, Doc. No. 125-4, PP. 2-3). Rigler's testimony purportedly is intended to rebut the testimony of Defendant's expert witness, John C. Marshall ("Marshall"). (Plaintiffs' Opposition to American Airlines, Inc.'s Motion to Strike the Diffenderfer Plaintiffs' Rebuttal Disclosure ("Plaintiffs' Opp."), P. 2). In their disclosure, Plaintiffs

noted copies of Rigler's written reports, qualifications, and compensation previously were produced to Defendant in connection with Wandel v. American Airlines, Inc., et al., Case No. 22052-00275-01, in the Missouri Circuit Court for the City of St. Louis. (Doc. No. 125-4, P. 3).[1]

In its Motion to Strike, Defendant contends that Rigler, "is a rebuttal witness in name only." (Defendant's Memo in Support, P. 2). Defendant suggests Rigler's testimony is offered not to rebut Marshall's opinions, but rather to present new evidence in support of Plaintiffs' case-in-chief. (Id.). In other words, according to Defendant Rigler is intended to serve as an additional primary expert. (Id.). As noted above, Plaintiffs failed to disclose Rigler by the deadline for the disclosure of primary experts, and so Defendant requests that the Court strike Plaintiffs' disclosure and exclude Rigler's testimony. (Id.).

## DISCUSSION

### A. Does the Rigler Report Constitute Rebuttal Testimony?

Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure defines rebuttal testimony as that offered, "solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B)." Under Eighth Circuit law, "rebuttal evidence may be used to challenge the evidence or theory of an opponent – and not to establish a case-in-chief." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006) (citations omitted). The Court thus will compare the two reports, in order to determine whether the Rigler Report contains opinions properly offered in rebuttal to those presented in the Marshall Report.

#### 1. Marshall Report

---

[1] In the Wandel case, Rigler was disclosed as a primary expert. (Defendant's Motion to Strike Diffenderfer Plaintiffs' Rebuttal Expert Witness Erik Rigler and Memorandum in Support ("Defendant's Memo in Support"), P. 6; see also Doc. No. 125-5, P. 2).

In his report Defendant's expert, John C. Marshall, discusses the airline industry practice of "code-sharing," in which one airline contracts with a second airline to sell fares on the second airline's flights under the first airline's name. (Marshall Report, Doc. No. 125-3, PP. 3-4). In the instant matter, Defendant had a code-sharing agreement with Corporate Airlines ("Corporate"). (Id., P. 9, ¶ 1). Marshall discusses the auditing process for code-sharing partner airlines. (Id., PP. 6-8). Marshall indicates the federal government does not require audits between domestic code-sharing partners[2], and therefore Defendant had no such duty to audit Corporate.[3] (Id., PP. 7, 10, ¶¶ 4-6).

Marshall notes that in the late 1980s, some airlines' legal departments began requiring their safety departments to perform safety audits of their domestic code-share partners. (Doc. No. 125-3, P. 8). Because these audits were not required by federal regulations, the companies that performed them developed their own independent standards, auditor qualifications, frequencies of reviews, and procedures to be used during the audits. (Id.). Marshall further opines that the audit standards were structured to be *process-based*, rather than *compliance-based*; in other words, "the auditor would verify that a process was in place to achieve the intended results as opposed to the auditor examining every record or every transaction to ensure 100 percent compliance." (Id., P. 9).

In the Observations/Opinions portion of his report, Marshall notes that at the request of Defendant, Corporate was audited by FJ Leonelli Group, Inc. in April, 2002 (the "Leonelli Audit"). (Doc. No. 125-3, P. 10, ¶ 6). Marshall concludes that the Leonelli Audit was conducted in accordance with airline industry standards. (Id., P. 10, ¶ 10). Specifically, Marshall states that hiring an outside company like Leonelli to conduct the audit was an acceptable practice within the airline

---

[2] The federal government does require air carriers to audit foreign air carriers with whom they share code-sharing agreements. (Doc. No. 125-3, PP. 6-7, 10, ¶ 5).

[3] According to Marshall, Defendant had neither a legal responsibility nor a contractual duty to supervise Corporate's operations for regulatory compliance. (Doc. No. 125-3, P. 10, ¶ 4).

industry. (Id., ¶ 7). Marshall further expresses the opinion that the audit was properly reviewed by Defendant, and uncovered no significant deficiencies or deviations from governmental regulations or industry standards. (Id., ¶¶ 11-12). Finally, Marshall disputes the opinion of Plaintiffs' expert, Douglas Roy Herlihy, that the Leonelli Audit should have identified a problem with the false reporting of pilot flight time records; Marshall claims that a properly conducted audit would not have identified such a problem. (Id., PP. 10-11, ¶ 13).

### 2. Rigler Report

Plaintiffs' expert, Erik Rigler, begins his report with a detailed description of the accident sequence and the responsibilities of the two crewmembers. (Rigler Report, Doc. No. 125-6, PP. 5-18). Rigler renders conclusions about pilot error. (Id., P. 27, ¶ 2). He further explains a flight hazard known as "Controlled Flight into Terrain" ("CFIT"), which occurs when an otherwise airworthy plane unintentionally crashes into land. (Id., PP. 18-19). Rigler details a number of safety protocols which can reduce the risk of CFIT, and then makes conclusions about whether Defendant was aware of the CFIT hazard, and whether Defendant and Corporate took steps to reduce the risk of CFIT. (Id., PP. 19-21, 27, ¶¶ 4, 10).[4]

In his report, Rigler does discuss the Leonelli Audit, and its alleged shortcomings. (Doc. No. 125-6, PP. 24-25). With respect to the Audit, Rigler opines in relevant part as follows:

> 7. American Airlines' use of an outside contract vendor and lack of oversight on that vendor, which conducted a compliance audit of Corporate Airlines but failed to discover serious discrepancies in the safety program at the codeshare

---

[4] Rigler provides other opinions as well, on topics such as Defendant's failure to consider the effect of fatigue on the Corporate crews; Defendant's failure to act to alter Corporate's procedure of establishing a 1,200-feet-per-minute descent after passing the Final Approach Fix; Defendant's failure to ensure that its codeshare airline assigned only aircraft equipped with an Enhanced Ground Proximity Warning System ("EGPWS") to airports without an Instrument Landing System; and Defendant's failure to monitor the timely installation of EGPWS into all aircraft operated by Corporate. (Doc. No. 125-6, PP. 27-28, ¶¶ 5, 6, 8, 9).

>     operation, demonstrated a departure from the highest duty of care owed to its
>     passengers....
>
> 11. American Airlines extended its safety arm around Corporate Airlines by conducting a codeshare audit, but failed to ensure that the audit was sufficient to discover serious safety shortcomings. In so doing, American Airlines failed to provide the highest duty of care for the passengers in its system.

(Id., P. 27, ¶¶ 7, 11). Rigler's final conclusion is that, "[t]he conduct of American Airlines demonstrated a complete indifference to and a conscious disregard for the safety and well-being of the passengers of American Connection Flight 5966." (Id., P. 28, ¶ 12).

Significantly, Rigler does not include the Marshall Report in the list of items he reviewed in preparing his report. (Doc. No. 125-6, PP. 30-31). In fact, Rigler never mentions the Marshall Report at all, an omission that is not surprising in light of the fact that he issued his alleged rebuttal report six days before Marshall provided his report.

### 3. Reports Compared

Upon consideration, the Court finds the Rigler Report does not rebut the Marshall Report. As stated above, the Marshall Report describes the practice of code-sharing, and the nature of governmental regulations and industry standards for auditing the procedures of an airline's code-sharing partners. Marshall expresses the conclusion that Defendant had no duty to audit Corporate, but that Leonelli nevertheless audited Corporate in accordance with industry standards. (Doc. No. 125-3, P. 10, ¶¶ 4, 7, 10, 13). Marshall further concludes the Leonelli Audit noted no significant deficiencies, and was properly reviewed by Defendant. (Id., ¶¶ 11, 12).

By way of contrast, the majority of the Rigler Report addresses entirely different subjects. Rigler expresses opinions and conclusions regarding the cause of the accident, Defendant's awareness of the CFIT hazard and the existence of CFIT avoidance procedures, and Defendant's failure to alter several allegedly dangerous procedures on Corporate's part. (Doc. No. 125-6, PP. 27-28, ¶¶ 2, 4-6,

8-10). These conclusions do not deal with the same subject matter as the Marshall Report, and thus do not constitute proper rebuttal testimony, which is used to "explain, repel, counteract or disprove evidence of the adverse party." United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005) (internal quotations and citation omitted).

Even where Rigler discusses the Leonelli Audit, his opinions do not rebut Marshall's testimony on the subject. For example, Rigler never claims Defendant had a duty under federal regulations to audit Corporate, nor does he deny the Leonelli Audit was conducted in accordance with industry standards. Rather, Rigler opines Defendant allegedly breached the duty of care owed to its passengers, because the Audit failed to uncover "serious safety shortcomings" at Corporate. (Doc. No. 125-6, P. 28, ¶¶ 7, 11). This conclusion, based on grounds not even discussed by Marshall, is not proper rebuttal testimony. See, e.g., Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc., 2005 WL 2465020 at *5 (M.D. Fla. Oct. 6, 2005), citing Daly v. FESCO Agencies NA Inc., 108 Fed. Appx. 476, 480 (9th Cir. 2004) (expert report not rebuttal testimony where it cast doubt on the opposing expert's theories based on new analysis and experimentation); see also Int'l Bus. Machs. Corp. v. Fasco Indus., Inc., 1995 WL 115421 at *3 (N.D. Cal. Mar. 15, 1995) (internal quotation marks omitted) ("[R]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts.").

Based on the foregoing, the Court concludes the Rigler Report does not rebut the Marshall Report. Rather, the Rigler Report contains primary evidence, suited for Plaintiffs' case-in-chief rather than the rebuttal of Defendant's expert.

**B.**   **Sanctions**

Because the Rigler Report encompasses primary, rather than rebuttal, evidence, it should have been disclosed by Plaintiffs' January 15, 2007, deadline for primary experts. Instead, it was disclosed

four months late, on May 14, 2007. "[F]ailure to disclose in a timely manner is equivalent to failure to disclose." Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008 (8th Cir. 1998), citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995). Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). See also Kunstler v. City of New York, 242 F.R.D. 261 (S.D.N.Y. 2007) (internal quotations and citation omitted) ("The sanction of preclusion under Rule 37(c)(1) is automatic absent a determination of either substantial justification or harmlessness."); Crump v. Versa Products, Inc., 400 F.3d 1104, 1110 (8th Cir. 2005) (explaining that failure to disclose an expert witness as required by Rule 26 justifies exclusion of the witness under Rule 37, unless such failure is justified or harmless). Ultimately, "'[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.'" Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999), quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996).

Importantly here, in order "[t]o avoid sanctions, the party who is alleged to have failed to comply with Rule 26 bears the burden to show that its actions were substantially justified or harmless." Parrish v. Freightliner, LLC, 471 F. Supp. 2d 1262, 1268 (M.D. Fla. 2006), citing Stallworth v. E-Z Serve Convenience Stores, 199 F.R.D. 366, 368 (M.D. Ala. 2001); see also Kunstler, 242 F.R.D. 261. Plaintiffs have failed to offer any argument to show their failure to disclose Rigler's primary expert testimony in a timely manner was substantially justified or harmless; instead, Plaintiffs continue to maintain that Rigler is in fact a rebuttal expert. (Plaintiffs' Opp., PP. 5-6). Plaintiffs thus have not met their burden of demonstrating their actions were substantially justified or

harmless, and so Rigler will be struck as an expert witness pursuant to Rule 37. See Fed. R. Civ. P. 37(c)(1); see also Murdick v. Catalina Mktg. Corp., 2007 WL 2021953 at *8 (M.D. Fla. Jul. 11, 2007) (striking plaintiff's challenged evidence where plaintiff failed to respond to defendant's motion to strike).

Moreover, even if Plaintiffs had advanced the argument that their failure timely to disclose Rigler was harmless, such argument would fail, as allowing the Rigler Report in at this late date would indeed prejudice Defendant. Specifically, the Court notes Defendant would have to respond to new theories of Plaintiffs' prima facie case, which seemingly were unanticipated prior to the disclosure of Rigler. (Defendant's Memo in Support, P. 9).[5] Further, Defendant asserts it had partially drafted a motion for summary judgment in reliance on Plaintiffs' case as it stood before the Rigler disclosure. (Id.)

Other courts have found prejudice in similar fact patterns. See, e.g., Murdick, 2007 WL 2021953 (not harmless where disclosure was late and defendant had already drafted its summary judgment motion); Schuller v. Great-West Life & Annuity Ins. Co., 2005 WL 2257634 at * 8 (N.D. Iowa Sept. 15, 2005) (not harmless where disclosure was eight months late and defendant had partially based its motion for summary judgment on the lack of the late evidence); Lidge v. Sears, Roebuck & Co., 2004 WL 1151986 at *6 (W.D. Mo. Apr. 29, 2004) (citation omitted) ("[T]he expense of preparing a second or amended motion for summary judgment, and the possibility of delaying the trial are not 'harmless.'").

## CONCLUSION

Accordingly,

---

[5] In order to prevent unfairness to Defendant, discovery likely would need to be reopened to allow Defendant to respond to Plaintiffs' new evidence.

**IT IS HEREBY ORDERED** that Defendant American Airlines, Inc.'s Motion to Strike Diffenderfer Plaintiffs' Rebuttal Expert Witness Erik Rigler (Doc. No. 125-1) is **GRANTED**, and Mr. Rigler is excluded from testifying at trial in this matter.

Dated this 16th day of August, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE